CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUL 0 8 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| N.B. HANDY COMPANY, INC., | CIVIL ACTION NO. 6:04-CV-00051 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| CHICAGO METALLIC CORPORATION, ET AL., | |
| *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court on a Motion to Dismiss or in the Alternative, for Summary Judgment, filed by Defendants Chicago Metallic Corporation (CMC") and Chesapeake Finished Metals, Inc. ("CFM") on December 9, 2004. This Court held a hearing in connection with this matter on April 19, 2005. For the reasons that follow, the motion shall be granted and this case shall be dismissed.

I.

CFM and its parent company CMC are suppliers of architectural building products and services, including coil coating. During the 1990s, Plaintiff N. B. Handy, Inc. ("Handy") contracted with CFM to purchase coated steel roofing materials for various projects. At issue

1

here are three separate contracts that Handy made with CFM for coated coils of metal roofing, each of which CFM slit and coated. These three orders of coated coil were ultimately installed on three different buildings: the "CFA Building" in Corbin, Kentucky; the "E-911 Building" in Rustburg, Virginia; and the "Roy M. Cash Residence" in Amherst County, Virginia.

Handy alleges that since the installation of the roofing materials on these buildings, the roofing materials have corroded, significantly shortening the expected life of the roofing. Handy further alleges that the corrosion pattern on the roofing materials is consistent with a defect in the paint primer of the paint pretreatment. As a consequence of this problem, Handy has spent significant resources replacing and repairing the roofing on these buildings. It has sued CFM and CMC in diversity on three counts: breach of warranty, breach of contract, and negligent manufacture. Defendants have moved to dismiss on the grounds that the statute of limitations bars the first two counts and that the third count is not a legally cognizable cause of action.

II.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should not be granted "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 46 (1957). A court must accept the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *See Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992). Nevertheless, a court need not accept as true allegations that are unsupported or conclusory, *see Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995), and it "need

2

not accept inferences drawn by the plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Weill v. Dominion Resources*, 875 F. Supp. 331, 339 (E.D. Va. 1994) (citations omitted). Although a motion to dismiss tests only the sufficiency of the complaint, the court may consider supplemental documents on a motion to dismiss without converting the motion to a motion for summary judgment when those documents are referenced in the complaint. *Gansner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (noting that a court may consider on a motion to dismiss, without converting it to one of summary judgment, not only documents attached to the complaint but also documents quoted, relied upon, or incorporated by reference in the complaint, as well as public records).

### III.

The Court agrees with Defendants that the contract was one for the sale of goods, not for services, and thus is governed by the Uniform Commercial Code (U.C.C.). As Plaintiff acknowledges, *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974), offers the following standard for determining the applicability of the U.C.C.:

> [T]he test for inclusion or exclusion [in the U.C.C. rubric] is not whether they [the goods or services] are mixed but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).

Id. at 960. The question is a threshold matter for the court to determine. *See Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 458 (4th Cir. 1983). Among the factors that the court considers in making this determination are: (1) the language of the contract,

3

(2) the nature of the business of the supplier, and (3) the intrinsic worth of the materials. *AAF-McQuay, Inc. v. MJC, Inc.*, 2002 Dist LEXIS 1785, *9 (W.D. Va. 2002) (*citing Coakley & Williams*, 706 F.2d at 460).

This Court's decision in *AAF-McQuay* is instructive. *AAF-McQuay*, like the instant case, considered an order for coated metal coils. Applying the three factors discussed above, the Court concluded that the contract selling these coils was one for the sale of goods, not of services. First, the Court found that the language of the contract suggested the sale of goods. It noted that the forms provided columns for "quantity," "product description," and "unit price," a vocabulary that was particular to goods. *Id.* at *9. Second, the Court found that the nature of defendant's business suggested the sale of goods, pointing to the facts that its pricing schedule was for "Coating for Coils." *Id.* at *10. Although the preparation of the metal coils required extensive service, the Court found that "things are not less 'goods' within the definition of the act because service may play a role in their ultimate use." *Id.* at *11 (citation omitted).

Here, analysis of the three factors produces the same result. First, the language of the contracts strongly suggests the sale of goods, not of services. Plaintiff sent "purchase order[s]" to CFM for the finished coils. Like the purchase orders in *AAF-McQuay*, they contain columns for "Quantity Ordered," "Unit of Measure," "Item Number," and "Description." Although the CFM responsive forms may have been designated as "work orders" and not "purchase orders," they too are steeped in the vocabulary of goods, including columns for "Item," "Quantity," "Description," and "Unit Price." Second, the nature of the business of the supplier here also supports the conclusion that CFM was in the business of selling the coils as goods. Although Plaintiff makes much of CFM's marketing claim of being "your source for coil coating *services*"

4

(emphasis added), CFM's marketing went on to conclude that "[t]he net result is *a coil coated product* that meets your specific needs" (emphasis added). Although it appears that CFM generally provides both goods and services, the coated coils here ultimately are a product to be marketed, despite the service that went into producing them. As noted in *AAF-McQuay*, items such as finished coils are no less "goods" simply because a great deal of labor went into producing them. *AAF-McQuay*, 2002 U.S. Dist. LEXIS 1785 at *11 (citing *Bonebrake*, 499 F.2d at 958). Finally, analysis of the intrinsic worth of the materials also supports the conclusion that the coated coils are goods and not services. As in *AAF-McQuay*, CFM only provided a single unit price for coated coils here, which subsumed any labor that may have gone into producing it. Because the contract is for the coated coils themselves, the lack of differentiation between goods and services in the contract should not be taken as evidence that services predominate, as it was Princess Cruises. Rather, in light of the other evidence, this lack of differentiation suggests that CFM, like other sellers of goods, ultimately intended the "service" it offered to culminate in an independently-marketable finished product. Thus, analysis of the three factors suggests that the coated coils at issue here were goods.

Because the contract was one for the sale of goods, it is subject to the U.C.C. provisions of the applicable state. Here, Maryland law governs because performance occurred when the coils were tendered there (F.O.B.), but even if the contract is governed by the law Virginia (where the Plaintiff is located), the applicable U.C.C. provision would be the same. Section 2-275 of the UCC, adopted by both states, provides in relevant part:

5

**Statute of Limitations in contracts for sale**
> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued . . . .
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made . . . .

Md. Code §2-275(2); Va. Code § 8.2-725(2). Accordingly, a four year statute of limitations applies here.

Despite Plaintiff's claims, the single exception to this default four-year statute of limitations for contracts concerning the sale of goods, provided in U.C.C. § 2-275(2), is not applicable. § 2-275(2) provides that the four year time bar does not apply where a warranty "explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance." Md. Code §2-275(2); Va. Code § 8.2-725(2). The Complaint here, however, contains no allegation of any express warranty of future performance that would trigger this provision. Even reading the Complaint broadly, there is no allegation that could be read to claim the existence of an explicit warranty of future performance. Plaintiff alleges only that "CFM expressly warranted to Handy that CFM would apply the coating to the metal in conformity with the manufacturer's warranty of such coating"(Cmplt. ¶ 6); that "CFM expressly warranted that CFM had coated all roofing materials according to the manufacturer's specifications as to the coating" (Cmplt. ¶ 37); and that "CFM further warranted that the coated roofing materials being provided to Handy would be adequate for the particular purpose of being installed as roofing materials" (Cmplt. ¶ 39). As Defendants correctly point out, these particular allegations make no explicit claim as to the length of time the goods are warranted to perform in the future. Accordingly, the alleged warranties cannot possibly trigger the narrow exception

6

provided by §2-725(2). *Joswick v. Chesapeake Mobile Homes, Inc.*, 362 Md. 261, 272 (2001) ("There is no problem when the warranty simply states that the goods have a certain positive quality or are free from all or certain defects but states no time period during which the goods will continue to have that quality. *That kind of warranty does not reference or extend to any future performance.*") (emphasis added).

Nor is the Court convinced by Plaintiff's argument that Defendant's warranty "that the application of coating to the materials has been performed in conformity with the specifications provided by the manufacturer" somehow should be construed as a future warranty of performance adopting an express warranty of the manufacturer. Plaintiff contends that the coating manufacturer, PPG, expressly warranted that its paint finish system for twenty (20) years, and therefore Defendant's guarantee to apply the paint in conformity with PPG's specifications also was a warranty that the ultimate roofing product would last twenty years. Plaintiff's argument is a misplaced attempt to bootstrap Defendant's warranty into an adoption of the apparent PPG warranty. A warranty to prepare goods in the manner specified by a third party is no more than that—it in no way assumes responsibility for future performance warranties that may have been made by that third party.

Furthermore, unlike *In re Lone Star Industries*, 776 F. Supp. 206 (D. Md. 1991), upon which Plaintiff relies, Plaintiff cannot plead that there is any ambiguity as to whether CFM made other express warranties, which arguably would make this issue ripe for a jury determination. *Lone Star* considered whether an express warranty of future performance had been made when the contract stated: "[t]he intent of this specification is to obtain uniform quality, durability, and performance through the design service life of 50 years for concrete rail ties." *Id.* at 219. The

7

Court ultimately concluded that it could not determine as a matter of law that the seller-defendant did not explicitly warrant the future performance of its concrete railroad lines. It found that "ambiguity exists as to the seller's intention, and parol evidence is necessary before the issue can be finally determined [by a jury]." *Id.* at 220. As *Lone Star* provides only persuasive authority in this Circuit, this Court initially questions why, if a warranty to future performance under § 2-725(2) only exists when its terms "*unambiguously* indicate that the manufacturer is warranting the future performance of the goods," *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983) (emphasis added), the existence of an ambiguity would ever require of a jury determination. Ambiguity alone appears to be sufficient to render the § 2–725(2) exception inapplicable. Nevertheless, even bracketing this issue, *Lone Star* is inapplicable here because there is no such ambiguity in the contract at issue. The contract provides explicitly that "except as provided in paragraph 8(a), above [certifying that the materials were applied in conformity with the manufacturer's specifications], seller gives no warranties, and all other warranties, express or implied . . . are hereby specifically disclaimed." Accordingly, it is not a jury issue whether any other express warranty of future performance existed.

For this reason, Plaintiff's argument that CFM's goods contained an express warranty of future performance must fail. Because of this fact, and the clear rule that, absent explicit future performance warranties, the statute of limitations bars contractual suits four years after performance, Plaintiff must demonstrate that tender of delivery occurred within four years before filing its Complaint. This Plaintiff simply cannot do. Although the Complaint is perhaps purposefully vague on some of the exact dates that the deliveries of these goods were tendered, it clearly indicates that such deliveries occurred no later than early 1996. Because this date puts the

8

January 4, 2004 Complaint well outside of the four year statute of limitations, Plaintiff's claims for breach of warranty fail. Furthermore, for the same reason, this date of delivery also puts any potential independent breach of contract claim in the Complaint well outside of the four year statute of limitations. Although Plaintiff argues that the U.C.C. requires good faith, diligence, and observance of other common law duties in the performance of a contract, which would carry with them a more lenient common law statute of limitations, this claim also fails. Even accepting *arguendo* the premise of Plaintiff's argument, the Complaint does not sufficiently support such alleged violations. Nowhere in the complaint does Plaintiff even mention a violation of such duties, and nothing in Plaintiff's factual pleadings suggests a violation of these duties. Rather, the Complaint focuses on Defendants' alleged production of defective coated roofing coils, an act that can occur entirely without violations of the duties Plaintiff now alleges. Accordingly, these first two counts of the Complaint must be dismissed.

This Court also must dismiss Plaintiff's count for "Negligent Manufacture." To the extent that this cause of action makes out a claim in tort, Defendants correctly point out that it is barred by the economic loss doctrine. Generally speaking, this doctrine provides that "no action in tort will lie" for "disappointed economic expectations." *Sensenbrenner v. Rust, Orlin & Neale*, 236 Va. 419, 423 (1988) (*citing Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69 (1982)). As explained by the *Sensenbrenner* court:

> Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

9

*Sensenbrenner*, 236 Va. at 425. The purpose of the economic loss doctrine is "to preserve the border between contract and tort law. Where tort law is well-suited to redressing injuries to persons or property, contract law is well-suited to distributing the risk of economic loss." *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 851 (6th Cir. 2002). The United States Supreme Court has explained that were there no economic loss rule, "contract would drown in a sea of tort." *East River S.S. Corp. v. Transamaerica Delaval, Inc.*, 476 U.S. 858, 866 (1988).

In the past, some courts have found that the economic loss doctrine applied only when the parties were not in privity with one another. *See Sensenbrenner*, 236 Va. at 422–23. Today, however, the majority rule is that privity is not a requirement for applying the economic loss doctrine. *See, e.g., Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990) ("Privity of contract is not an element of the economic loss doctrine."); *Tioga Public School Dist. #15 v. United States Gypsum Co.*, 984 F.2d 915, 918 (8th Cir. 1993); *Excess Risk Underwriters, Inc. v. Lafayette Life Insurance Co.*, 208 F. Supp. 2d 1310, 1314 (S.D. Fla. 2002), *Higginbotham v. Dryvit*, 2003 U.S. Dis. LEXIS 4530, *18 (M.D.N.C. 2003).

Under Virginia choice of law rules, a tort claim is to be governed by the law of the place of the injury, which here is Virginia (for the E-911 Building and the Roy M. Cash residence) and Kentucky (for the CFA Building). Here, Plaintiff alleges losses due to an alleged defect in the product, a claim that the parties do not contest constitutes economic loss. *See Sensenbrenner*, 236 Va. at 425. The question, therefore, is whether the economic loss doctrine applies in Virginia and Kentucky to bar recovery for Plaintiff's "negligent manufacture" claim.

As for Virginia, Plaintiff correctly points out that the *Sensenbrenner* court identified the

10

economic loss doctrine as still containing the requirement that the parties not be in privity. *Sensenbrenner*, 236 Va. at 422–23 (acknowledging the no-privity requirement from *Blake Construction Co. v. Alley*, 233 Va. 31 (1987)). Plaintiff also notes that despite further opportunities, the Supreme Court of Virginia has never formally abolished the no-privity requirement. For example, in *Ward v. Ernst & Young*, 246 Va. 317 (1993), the court restated the privity requirement in dicta, noting the "clear implication" from earlier language "that, when privity exists, economic losses may be recovered under a negligence theory." *Id.* at 326 n.3. For this reason, Plaintiff urges that the no-privity requirement is still in effect in Virginia and thus the economic loss doctrine should not apply here, where the parties certainly are in privity of contract.

Although it is true that no Supreme Court of Virginia case has formally acknowledged that privity is not required to apply in the economic loss doctrine, it is also true that it "has yet to hold that the economic loss rule may *not* be applied to a case in which the parties maintain privity of contract." *Bruner v. Ford Motor Co.*, 52 Va. Cir. 301, 304 (2000) (emphasis added). In fact, even in the wake of *Sensenbrenner*, the Supreme Court of Virginia noted in dicta that, despite the apparent privity between a homeowner's association and a developer, "economic losses are not recoverable in tort; they are purely the result of disappointed economic expectations" for which "[t]he law of contracts provides the sole redress." *Rotunda Condominium Unit Owners Ass'n v. Rotunda Associates*, 238 Va. 85, 90 (1989) (citing *Sensebrenner*, 236 Va. At 424). Moreover, lower Virginia courts have *expressly* rejected the notion that privity precludes application of the economic loss doctrine. *Bruner*, 52 Va. Cir. at 304 (2000) (noting that the "economic loss rule, regardless of whether privity exists between the

11

parties, would preclude recovery of such damages under a tort theory"); *Bloom v. Southeastern Investment Corp.*, 1992 WL 884454, *2 (Va. Cir. Ct. Jan. 27, 1992) (economic loss doctrine applies even when the parties are in privity).

Moreover, quite apart from any discussion of the "economic loss doctrine" per se, Virginia courts have regularly rejected claims sounding in tort when the alleged breach of duty is founded solely on a contractual relationship. *See Holles v. Sunrise Terrace,* Inc., 257 Va. 131, 136 (1999) (a contract does not give rise to a "special relationship" imposing a common law duty); *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553 (1998). Although *McDevitt* acknowledged that a party may in certain circumstances show both a breach of contract and a tortious breach of duty, it emphasized that "the duty tortiously or negligently breached must be a common law duty, *not one existing between the partes solely by virtue of the contract.*" *Id.* at 558 (emphasis added). Here, it is not contested that whatever duty Defendants had in manufacturing the coating roofing coils was a direct consequence of their contract, not of any common law duty.

In light of these decisions, this Court has already held that if faced with the question today, the Virginia Supreme Court would find that the economic loss doctrine applies notwithstanding a lack of privity. *Fournier Furniture, Inc. v. Waltz-Holst Blow Pipe Co.*, 1997 WL 122974 (W.D. Va. March 13, 1997). In *Fournier Furniture*, this Court stated:

> Whether the parties are in privity of contract is not viewed in most jurisdictions as determinative. *See Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990) ("Privity of contract is not an element of the economic loss doctrine."). In fact, in view of the purposes of the rule, it can be argued that the most likely cases in which to apply the economic loss rule would be those in which there is privity between the parties. If the basis of the rule is to allow the parties to allocate the risk of nonperformance as they see

12

> fit, then those cases—like the present one—in which the parties actually negotiated the
> terms of their contract, should be the ones in which the doctrine is applied.

Id. at *3. *Fournier* noted that the Supreme Court of Virginia had cited with approval the leading

cases on economic loss doctrine, which do not require privity. Accordingly, it concluded that

"[i]n spite of the dicta in the *Ward* case, . . . the Supreme Court of Virginia would apply the

economic loss rule [when privity exists]." *Id.*

In light of *Fournier* and the conclusions throughout the Virginia courts, this Court

concludes that in Virginia, the economic loss doctrine does not have a lack of privity

requirement. Furthermore, the same result obtains in Kentucky, where the federal courts

similarly have ruled that the if the state supreme court were faced with the issue, it would not

require a lack of privity. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276

F.3d 845, 849–51 (6th Cir. 2002). As Plaintiff has cited no law, Kentucky or otherwise,

contradicting the Sixth Circuit's conclusion, this Court declines to strike out on a different course

today. Accordingly, under both Virginia and Kentucky law, the economic doctrine applies to the

instant circumstances, where the parties were in privity of contract.

For these reasons, Plaintiff also cannot prevail on the third count of its Complaint,

alleging "negligent manufacture." Further, contrary to Plaintiff's claims, Plaintiff has not alleged

a "negligent misrepresentation" claim against Defendants based on the language of the

Complaint. Even if it had, for the reasons discussed above, this claim too sounds in contract

rather than in tort. *See Richmond Metropolitan Authority v. McDevitt*, 256 Va. 553, 559 (1998)

(noting that constructive fraud and negligent misrepresentation "are nothing more than

13

allegations of negligent performance of contractual duties and are, therefore, not actionable in tort").

Because all three of Plaintiff's counts fail to state a claim upon which relief can be granted, Defendants' motion to dismiss shall be granted.

An appropriate Order shall issue.

ENTERED: _Norman C Moon_

U.S. District Judge

_July 8, 2005_
Date

14